1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              EASTERN DISTRICT OF CALIFORNIA
10
11  JESS ANZO, JR.,                         Civ. No.  2:13-cv-00355-KJM-CMK
12                Plaintiff,
13      v.                                  ORDER
14
15  UNION PACIFIC RAILROAD
    COMPANY, and DOES 1 through 10,
16  inclusive,
17                Defendants.
18
19          On October 30, 2014, the court conducted a final pretrial conference.   Larry
20  Lockshin appeared for plaintiff Jess Anzo, Jr.; Kristoffer Mayfield and Jacob Flesher appeared for
21  defendant Union Pacific Railroad Company.
22          After hearing, and good cause appearing, the court makes the following findings
23  and orders:
24      I.        JURISDICTION/VENUE
25      Jurisdiction and venue are not contested.
26      II.       JURY/NON-JURY
27      Both parties have requested a trial by jury.
28
                                 1

III.     CLARIFICATION OF CLAIMS TO BE TRIED

A revised Joint Pretrial Statement was filed by the parties on October 31, 2014. ECF No. 58.  Union Pacific has withdrawn its defense of contributory negligence, as asserted in its answer to plaintiff's complaint, and does not anticipate offering evidence that Mr. Anzo's conduct on June 14, 2011 fell below the applicable standard of care.

IV.     UNDISPUTED FACTS

This is a Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 et seq., lawsuit where Anzo alleges one cause of action against Union Pacific seeking compensatory damages for personal injuries arising out of a rear-end collision between a stopped self-propelled ballast regulator machine, operated by Anzo, and another machine, a tamper, operated by a different Union Pacific employee. The collision occurred at approximately 10 miles per hour on June 14, 2011. At the time of the collision, Anzo was seated in his stopped machine performing paperwork while awaiting a passing train. Union Pacific does not dispute it owed Plaintiff a duty of care on June 14, 2011 and that said duty of care was breached by its employee's conduct.

V.     DISPUTED FACTUAL ISSUES

Anzo has alleged that the collision caused him injury to the tissues and structures of his cervical spine, lumbar spine, left hip, left shoulder, left wrist, right knee and head, resulting in a concussion and post-concussion syndrome.  Union Pacific disputes Anzo's alleged conditions, and the significant resulting treatment, including several surgeries, were caused or contributed to by the incident. Union Pacific also contends Anzo had significant pre-existing medical issues which contributed to his symptoms, both directly after the incident and continuing through the present.

VI.     SPECIAL FACTUAL INFORMATION

(A)  This is a Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 et seq., lawsuit where Anzo alleges one cause of action against Union Pacific seeking compensatory damages for personal injuries arising out of a rear-end collision between a stopped self-propelled ballast regulator machine, operated by Mr. Anzo, and another machine, a tamper, operated by a different Union Pacific employee.  The collision occurred at approximately 10 miles per hour on

2

June 14, 2011. At the time of the collision, Anzo was seated in his stopped machine performing paperwork while awaiting a passing train.  On these grounds, Anzo alleges that Union Pacific failed to provide him with a reasonably safe place to work in violation of the FELA.

(B)  Anzo was born on February 15, 1955.  He was 56 years old at the time of the collision.  He had worked for Union Pacific as a maintenance of way track laborer, machine operator, and track foreman since 1973, immediately following graduation from high school.  Prior to the collision, Anzo had planned to work until at least age 60. Prior to the collision, Anzo had never suffered any injuries or treatment for his cervical spine, lumbar spine, left hip, left shoulder, right knee and head.  He had some prior treatment for carpal tunnel in his right and left wrist, including a prior right wrist surgery.

As a result of the collision and alleged resulting concussion, Anzo allegedly has no memory of the impact itself, nor any events occurring later that day and the following early morning.  Anzo's last recollection prior to the collision is that he was seated in the ballast regulator completing paperwork.  An ambulance was called and Anzo was transported to the emergency room at Mt. Shasta Mercy Medical Center.  At the hospital, Mr. Anzo complained of headaches, neck pain, low back pain, left hip pain, and right knee pain.  Anzo was examined and various diagnostic tests were performed and he was released to return home.  His first recollection subsequent to the collision is of a Union Pacific claims agent coming to his house the morning after the collision.

Since the date of the collision and up to the present date, Anzo has been under constant and regular medical care for his injuries.  In addition to carpal tunnel surgery to the left wrist, he has undergone a total left hip replacement procedure and arthroscopic surgery to his left shoulder and right knee.  From the time of the collision to the present, Anzo has also undergone intermittent but frequent injection therapy to the cervical spine and right knee.  Anzo's treating physicians have opined that he will also require a two level lumbar fusion procedure, surgery to his cervical spine, and surgery to replace his right knee.  The future medical expenses including the surgeries and ongoing need for medical treatment are anticipated to be in excess of $250,000.  There will also be evidence of past medical expenses offered at the time of trial.  Union Pacific

3

1    disputes that Anzo's alleged conditions, and the significant resulting treatment, including several

2    surgeries, were caused or contributed to by the incident.  Union Pacific also contends that Anzo

3    had significant pre-existing medical issues which contributed to his symptoms, both directly after

4    the incident and continuing through the present.

5           Further, as a result of these injuries and Anzo's continuing need for significant

6    medical treatment, Anzo contends that he has been totally disabled and cannot return to gainful

7    employment.  Anzo's forensic economist will testify that the present value of Anzo's past loss of

8    earnings and loss of future earning capacity is approximately $400,000.  Additionally, his

9    economist will testify that Anzo has suffered a past and future loss of the value of home services

10   in excess of $360,000.  Union Pacific contends Anzo's claims for damages are overstated.  Anzo

11   also alleges he has suffered significant past and future general damages to be determined by the

12   jury at the time of trial.

13          VII.     STIPULATIONS/AGREED STATEMENTS

14          The parties stipulate to the following: 1) this action is governed by the Federal

15   Employers Liability Act; 2) Union Pacific is a common carrier by railroad engaged in interstate

16   commerce; and 3) Anzo was in the course and scope of his duties on behalf of Union Pacific in

17   furtherance of interstate commerce at the time of the collision.

18          VIII.    RELIEF SOUGHT

19          Anzo seeks compensation for his past and future economic and general damages as

20   described herein, for his costs of suit, for post-judgment interest, and for attorneys' fees and costs

21   resulting from Union Pacific's failure to admit multiple requests for admissions regarding facts

22   related to liability and damages.

23          Union Pacific seeks to have Anzo take nothing from this action, or that Anzo's

24   damages be appropriately apportioned based on both Anzo's alleged pre-existing medical

25   conditions.

26   /////

27   /////

28   /////

4

IX.     POINTS OF LAW

        The parties shall alert the court to disputes about the applicable law and legal standards.  Trial briefs addressing these points more completely shall be filed with this court no later than seven days prior to the date of trial in accordance with Local Rule 285.

X.      WITNESSES

    (A)  Plaintiff's witnesses are identified in Attachment 1 to this statement.

    (B)   Defendant's witnesses are identified in Attachment 2 to this statement.

Each party may call any witnesses designated by the other.

        A.      The court will not permit any other witness to testify unless:

                (1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

                (2) The witness was discovered after the pretrial conference and the proffering party makes the showing required in "B," below.

        B.      Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

                (1) The witness could not reasonably have been discovered prior to the discovery cutoff;

                (2) The court and opposing parties were promptly notified upon discovery of the witness;

                (3) If time permitted, the party proffered the witness for deposition; and

                (4) If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

XI.     EXHIBITS, SCHEDULES AND SUMMARIES

        Plaintiff's exhibits are identified on attachment 3.  At trial, plaintiff's exhibits shall be listed numerically.

5

1    Defendant's exhibits are identified on attachment 4.  At trial, defendant's exhibits

2  shall be listed alphabetically.

3    The court encourages the parties to generate a joint exhibit list to the extent

4  possible.  Joint Exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.

5    All exhibits must be premarked.

6    The parties must prepare exhibit binders for use by the court at trial, with a side tab

7  identifying each exhibit in accordance with the specifications above.  Each binder shall have an

8  identification label on the front and spine.

9    The parties must exchange exhibits no later than twenty-eight days before trial.

10  Any objections to exhibits are due no later than fourteen days before trial.

11    A.  The court will not admit exhibits other than those identified on the exhibit lists

12  referenced above unless:

13    1.  The party proffering the exhibit demonstrates that the exhibit is for the purpose

14    of rebutting evidence that could not have been reasonably anticipated, or

15    2.  The exhibit was discovered after the issuance of this order and the proffering

16    party makes the showing required in Paragraph "B," below.

17    B.  Upon the discovery of exhibits after the discovery cutoff, a party shall

18  promptly inform the court and opposing parties of the existence of such exhibits so that the court

19  may consider their admissibility at trial. The exhibits will not be received unless the proffering

20  party demonstrates:

21    1.  The exhibits could not reasonably have been discovered earlier;

22    2.  The court and the opposing parties were promptly informed of their existence;

23    3.  The proffering party forwarded a copy of the exhibits (if physically possible) to

24    the opposing party.  If the exhibits may not be copied the proffering party must

25    show that it has made the exhibits reasonably available for inspection by the

26    opposing parties.

27  /////

28  /////

6

XII.    DEPOSITION TRANSCRIPTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than fourteen days before trial.

XIII.   FURTHER DISCOVERY OR MOTIONS

The parties have exchanged their respective depositions and discovery designations subject to the stipulation reached prior to the October 30, 2014 pretrial conference. The parties anticipate filing motions in limine as described in their revised joint pretrial statement, filed on October 31, 2014.  ECF No. 58.

XIV.   AMENDMENTS/DISMISSALS

None anticipated.

XV.    SETTLEMENT

The parties have expressed interest in appearing for a second settlement conference before Magistrate Judge Kendall J. Newman.  A settlement conference is scheduled before Judge Newman for **December 17, 2014** at 10:00 a.m. in Courtroom No. 25, 8th Floor. The parties are directed to exchange non-confidential settlement conference statements seven (7) days prior to this settlement conference.  These statements shall simultaneously be delivered to the court using the following email address: kjnorders@caed.uscourts.gov.  If a party desires to share additional confidential information with the court, they may do so pursuant to the provisions of Local Rule 270(d) and (e).  Each party is reminded of the requirement that it be represented in person at the settlement conference by a person able to dispose of the case or fully authorized to settle the matter at the settlement conference on any terms.  *See* Local Rule 270.

XVI.   MOTIONS IN LIMINE

Motions in limine will be decided on the first day of trial.  As discussed at the pretrial conference, parties are required to meet and confer prior to filing any motions in limine. Each ruling is made without prejudice and is subject to proper renewal, in whole or in part, during trial.  If a party wishes to contest a pretrial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds. *See* FED. R. EVID. 103(a); *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("Where a district court makes a

7

1   tentative in limine ruling excluding evidence, the exclusion of that evidence may only be

2   challenged on appeal if the aggrieved party attempts to offer such evidence at trial.") (alteration,

3   citation and quotation omitted).  In addition, challenges to expert testimony under *Daubert v.*

4   *Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) are denied without prejudice.  Should a

5   party wish to renew a *Daubert* challenge at trial, it should alert the court, at which point the court

6   may grant limited voir dire before such expert may be called to testify.

7       XVII.   JOINT STATEMENT OF THE CASE

8           The parties must provide a joint statement of the case for use during voir dire and

9   preliminary jury instructions by the first day of trial.

10      XVIII.  SEPARATE TRIAL OF ISSUES

11          There will be no separate trial of issues.

12      XIX.    IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

13          Not applicable. There are no court appointed experts.

14      XX.     ATTORNEYS' FEES

15          Anzo anticipates that he will file a post-trial motion for attorneys' fees and costs as

16  a result of Union Pacific's failure to admit requests for admissions regarding liability and

17  damages issues that Anzo was consequently forced to prove at trial.  Union Pacific anticipates

18  similar post-trial filings.

19      XXI.    ESTIMATED TIME OF TRIAL/TRIAL DATE

20          Jury trial is set for **January 5, 2015** at 9:00 a.m. in Courtroom Three before the

21  Honorable Kimberly J. Mueller.  Trial is anticipated to last 6-9 days.  The parties are directed to

22  Judge Mueller's trial schedule outlined at the "important information" link located on her web

23  page on the court's website.

24      XXII.   PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS

25          The parties shall file any proposed jury voir dire seven days before trial.  Each

26  party will be limited to ten minutes of jury voir dire.

27          The court directs counsel to meet and confer in an attempt to generate a joint set of

28  jury instructions and verdicts.  The parties shall file any such joint set of instructions fourteen

1  days before trial, identified as "Jury Instructions and Verdicts Without Objection."  To the extent

2  the parties are unable to agree on all or some instructions and verdicts, their respective proposed

3  instructions are due fourteen days before trial.

4         Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether

5  agreed or disputed, as a word document to kjmorders@caed.uscourts.gov no later than fourteen

6  days before trial; all blanks in form instructions should be completed and all brackets removed.

7         Objections to proposed jury instructions must be filed seven days before trial; each

8  objection shall identify the challenged instruction and shall provide a concise explanation of the

9  basis for the objection along with citation of authority.   When applicable, the objecting party

10  shall submit an alternative proposed instruction on the issue or identify which of his or her own

11  proposed instructions covers the subject.

12     XXIII. <u>OBJECTIONS TO PRETRIAL ORDER</u>

13         Each party is granted fourteen days from the date of this order to file objections to

14  the same.  If no objections are filed, the order will become final without further order of this

15  court.

16  DATED: November 18, 2014

17

18  _____

19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

9

**ATTACHMENT 1 – PLAINTIFF'S WITNESS LIST**

1. Jess Anzo: Mr. Anzo is the plaintiff in this case. He is anticipated to testify regarding issues of liability and damages.

2. Anne Anzo: Mrs. Anzo is Mr. Anzo's wife. She is anticipated to testify regarding issues of damages and her observations of Mr. Anzo both before and after the collision.

3. Tom Hastings: Mr. Hastings was a first responder at the scene of the collision. He is expected to testify to his observations at the scene and interactions with Mr. Anzo and others. Mr. Hastings may also testify to his observations of Mr. Anzo before and after the collision.

4. Rick Berger: Mr. Berger was one of Mr. Anzo's coworkers prior to and on the day of the collision. Mr. Berger is anticipated to testify regarding issues of liability, the events on the date of the collision, his observations of Mr. Anzo's ability to work and activity level before the date of the collision, and Mr. Anzo subsequent to the collision.

5. Ranie Gunther: Mr. Gunther was the operator of the tamper which collided with Mr. Anzo's ballast regulator. Mr. Gunther is anticipated to testify regarding issues of liability, the events on the date of the collision, his observations of Mr. Anzo's ability to work and activity level before the date of the collision, and Mr. Anzo subsequent to the collision.

6. Emmett Womack: Mr. Womack was Mr. Anzo's supervisor prior to the collision and on the day of the collision. Mr. Womack is anticipated to testify regarding issues of liability, the events on the date of the collision, his observations of Mr. Anzo's ability to work and activity level before the date of the collision, and Mr. Anzo subsequent to the collision.

7. Glen Lackemeyer: Mr. Lackemeyer is a friend of Mr. Anzo and is anticipated to testify damages issues based on his observations of Mr. Anzo's ability to engage in physical activities both before and after the collision and the impact of the collision on Mr. Anzo as evidenced by his pre and post collision demeanor and affect.

8. Terry Bertolucci: Mr. Bertolucci is a friend of Mr. Anzo and is anticipated to testify damages issues based on his observations of Mr. Anzo's ability to engage in physical activities both before and after the collision and the impact of the collision on Mr. Anzo as evidenced by his pre and post collision demeanor and affect.

9. Gil Casey: Mr. Casey is a friend of Mr. Anzo and is anticipated to testify damages issues based on his observations of Mr. Anzo's ability to engage in physical activities both before and after the collision and the impact of the collision on Mr. Anzo as evidenced by his pre and post collision demeanor and affect.

10. Kevin Hughes: Mr. Hughes is a friend of Mr. Anzo and is anticipated to testify damages issues based on his observations of Mr. Anzo's ability to engage in physical activities both before and after the collision and the impact of the collision on Mr. Anzo as evidenced by his pre and post collision demeanor and affect.

11. Dusty Bullen: Mr. Bullen is a friend of Mr. Anzo and is anticipated to testify damages issues based on his observations of Mr. Anzo's ability to engage in physical activities both before and after the collision and the impact of the collision on Mr. Anzo as evidenced by his pre and post collision demeanor and affect.

12. Bert Doney: Mr. Doney is a friend of Mr. Anzo and is anticipated to testify damages issues based on his observations of Mr. Anzo's ability to engage in physical activities both before and after the collision and the impact of the collision on Mr. Anzo as evidenced by his pre and post collision demeanor and affect.

13. Ross Bullen: Mr. Bullen is a friend of Mr. Anzo and is anticipated to testify damages issues based on his observations of Mr. Anzo's ability to engage in physical activities both before and after the collision and the impact of the collision on Mr. Anzo as evidenced by his pre and post collision demeanor and affect.

14. Gayle Jackson: Ms. Jackson is a claims agent for Union Pacific. She is anticipated to testify to interactions with Mr. Anzo after the collision and her observations and investigation of the collision.

15. Dr. Sam Williams: Dr. Williams provided medical treatment to Mr. Anzo before and after the collision. Dr. Williams is anticipated to testify to issues regarding Mr. Anzo's past, present, and future medical conditions, his treatment, diagnosis and prognosis of the injuries that are the subject matter of this case, the impact of these injuries on Anzo's ability to work and engage in other activities, the nature and extent of Mr. Anzo's injuries, medical causation, and Mr. Anzo's

11

past and future medical bills and expenses.

16. Dr. Glen O'Sullivan: Dr. O'Sullivan is Anzo's treating orthopedic surgeon. Dr. O'Sullivan is anticipated to testify to issues regarding Mr. Anzo's past, present, and future medical conditions, his treatment, diagnosis and prognosis of the injuries that are the subject matter of this case, the impact of these injuries on Anzo's ability to work and engage in other activities, the nature and extent of Mr. Anzo's injuries, medical causation, and Mr. Anzo's past and future medical bills and expenses.

17. Dr. Guenther Knoblich: Dr. Knoblich provided medical treatment to Mr. Anzo before and after the collision. Dr. Knoblich is anticipated to testify to issues regarding Mr. Anzo's past, present, and future medical conditions, his treatment, diagnosis and prognosis of the injuries that are the subject matter of this case, the impact of these injuries on Anzo's ability to work and engage in other activities, the nature and extent of Mr. Anzo's injuries, medical causation, and Mr. Anzo's past and future medical bills and expenses.

18. Dr. Shishir Dhruva: Dr. Dhruva provided medical treatment to Mr. Anzo subsequent to the collision. Dr. Dhruva is anticipated to testify to issues regarding Mr. Anzo's past, present, and future medical conditions, his treatment, diagnosis and prognosis of the injuries that are the subject matter of this case, the impact of these injuries on Anzo's ability to work and engage in other activities, the nature and extent of Mr. Anzo's injuries, medical causation, and Mr. Anzo's past and future medical bills and expenses.

19. Dr. Mark Greenberg: Dr. Greenberg provided medical treatment to Mr. Anzo subsequent to the collision. Dr. Greenberg is anticipated to testify to issues regarding Mr. Anzo's past, present, and future medical conditions, his treatment, diagnosis and prognosis of the injuries that are the subject matter of this case, the impact of these injuries on Anzo's ability to work and engage in other activities, the nature and extent of Mr. Anzo's injuries, medical causation, and Mr. Anzo's past and future medical bills and expenses.

20. Dr. Zakir Ali: Dr. Ali provided medical treatment to Mr. Anzo before and after the collision. Dr. Ali is anticipated to testify to issues regarding Mr. Anzo's past, present, and future medical conditions, his treatment, diagnosis and prognosis of the injuries that are the subject matter of this

case, the impact of these injuries on Anzo's ability to work and engage in other activities, the nature and extent of Mr. Anzo's injuries, medical causation, and Mr. Anzo's past and future medical bills and expenses.

21. Barry Ben Zion Ph.D.: Dr. Ben Zion is forensic economist and is anticipated to testify to issues of economic damages and lost earning capacity.

22. Wilson Hayes Ph.D.: Dr. Hayes is an expert in biomechanics and accident reconstruction. Dr. Hayes is anticipated to testify to liability issues, damages, biomechanics, injury causation, and accident reconstruction.

23. Dr. Brad S. Kauder: Dr. Kauder is a licensed psychologist and neuropsychologist. Dr. Kauder is expected to testify to damages issues regarding the neuropsychological injuries suffered by Mr. Anzo as a result of his concussion, including Mr. Anzo's loss of memory and post-concussion syndrome.

24. Dr. Michael Moskowitz: Dr. Moskowitz is a pain management physician. Dr. Moskowitz is anticipated to testify to issues regarding Mr. Anzo's past, present, and future medical conditions, the physiological and psychological impact of Anzo's chronic pain condition, his treatment, diagnosis and prognosis of the injuries that are the subject matter of this case, the impact of these injuries on Anzo's ability to work and engage in other activities, the nature and extent of Mr. Anzo's injuries, medical causation, and Mr. Anzo's past and future medical bills and expenses.

**ATTACHMENT 2 – DEFENDANT'S WITNESS LIST**

1. JESS ANZO, Plaintiff;

2. Anne Anzo, 404 Anzo Park Drive, Mt. Shasta, California;

3. Emmett Womack, Union Pacific employee available through defense counsel;

4. Gordon Thompson, Union Pacific employee available through defense counsel;

5. Rick Berger, Union Pacific employee available through defense counsel;

6. George Grochol, Union Pacific employee available through defense counsel;

7. Ranie Guenther, last known address 19866 Little Acres Lane,Redding, California;

8. Ruth Arnush, Union Pacific employee available through defense counsel;

9. Gayle Jackson, Union Pacific employee available through defense counsel;

10. Dr. Thomas E. Morris, M.D., Mercy Medical Center, Mt. Shasta California;

11. Dr. Peter Halt, M.D., Mercy Medical Center, Mt. Shasta, California;

12. Dr. Shishir Dhruva, M.D., 1335 Buenaventura Blvd., Suite 100, Redding, California;

13. Dr. Zakir Ali, M.D., 1801 Highway 99 N, Suite B, Ashland, Oregon;

14. Mark Greenberg, M.D., 638 N. Main Street, Ste. #A, Ashland, OR 97520;

15. Terry Rush, M.D., Location unknown. Last known address: 351 Hartnell Avenue, Redding, CA 96002

16. Sam Williams, M.D. , 1831 College Ave, Weed, CA 96094;

17. Glen O'Sullivan, M.D., 269 Maple St., Ashland, OR 97520;

18. Guenther Knoblich, M.D., 269 Maple St., Ashland, OR 97520;

19. Scott Young, M.D., Location unknown. Last known address: 521 N Main St, Ashland, OR 97520;

20. Steven Feinberg, M.D., Feinberg Medical Group, 825 El Camino Real, Palo Alto, California 94301, (650) 223-6408, Retained Expert;

21. Kirsten White M.S., P.E., Talas Engineering, 20902 Cabot Boulevard, Hayward, CA 94545, (510) 723-1130, Retained Expert;

22. Jennie McNulty, Vavoulis & Weiner, 445 S. Figueroa Street, Suite 3700, Los Angeles, CA 90071, (213) 817-6600, Retained Expert.

23. Dr. Dean C. Delis, Ph.D., A.B.P.P., 1016 Second Street, Encinitas, CA 92024, (619) 921-1900, Retained Expert

DATED:  November 18, 2014.

**ATTACHMENT 3 – PLAINTIFF'S EXHIBIT LIST**

1. Anzo's 52032 Injury Report dated July 12, 2011

2. Anzo's 52032 Injury Report dated September 30, 2011

3. Ranie Gunther's 52032 Injury Report

4. Rick Berger's 52032 Injury Report

5. Ranie Gunther's Written Statement to Union Pacific

6. Ranie Gunther's Taped Statement to Union Pacific

7. Union Pacific RMCC Incident Management Report

8. Union Pacific report "Tamper and Regulator Collision at CPCP334"

9. Union Pacific Track and Time Report for June 14, 2011

10. Union Pacific Track and Time Permit (Exhibit 3 to Emmett Womack Deposition)

11. Applicable Union Pacific Safety Rules

12. Photographs by Gayle Jackson of the scene of the collision

13. Photographs by George Grochol of the scene of the collision

14. Photographs by Gordon Thompson of the scene of the collision

15. Photographs by Rick Berger of the scene of the collision

16. Aerial photographs of the scene of the collision

17. Photographs attached to Rick Berger's Deposition

18. Photographs attached to Emmett Womack Deposition

19. Photographs of Anzo being treated for his injuries and taken to hospital on June 14, 2011

20. Photographs of Anzo after left hip surgery

21. Photographs of Anzo's swollen right knee on October 19, 2013

22. Photographs of Anzo's knee aspiration April 2014

23. Photographs of Anzo's neck injection procedure on April 2014

24. Photographs of Anzo's injuries as attached to Anzo's deposition

25. Union Pacific's Job Safety Analysis Regarding Operating On-Track Equipment

26. Emmett Womack's Notes of June 14, 2011 (Exhibit 23 to Emmett Womack Deposition)

16

27. Emmett Womack's Notes of June 14, 2011 (Exhibit 24 to Emmett Womack Deposition)

28. Emmett Womack's Notes of June 14, 2011 (Exhibit 25 to Emmett Womack Deposition)

29. Union Pacific PowerPoint regarding the collision (Exhibit 3 to Gordon Thompson Deposition)

30. Photographs attached to Gordon Thompson Deposition

31. Union Pacific Track Profiles and Maps (Exhibit 20 to Gordon Thompson Deposition)

32. Thompson/Perry Email of June 14, 2011 (Exhibit 21 to Gordon Thompson Deposition)

33. Wilson Hayes Rule 26 Report of August 24, 2014

34. Wilson Hayes Rule 26 Report of September 8, 2014

35. Wilson Hayes Site Inspection Photographs

36. Wilson Hayes Site Inspection Notes

37. Wilson Hayes PowerPoint Presentation

38. Wilson Hayes Ph.D Animation

39. Wilson Hayes Ph.D Literature File

40. Wilson Hayes Ph.D CV

41. Medical records and binders of post-collision medical treatment

    a. Mount Shasta Ambulance

    b. Mercy Hospital Mount Shasta

    c. Sam Williams, M.D.

    d. Mercy Hospital Redding

    e. Shishir Dhruva, M.D.

    f. Zakir Ali, M.D.

    g. Guenther Knoblich, M.D.

    h. Scott Young, M.D.

1        i. Mount Shasta Physical Therapy

2        j. Mark Greenberg, M.D.

3        k. Glen O'Sullivan, M.D.

4        l. Siskiyou Home Health Services

5        m. Ashland Community Hospital

6    42. Medical records and binders for pre-collision medical treatment

7        a. Sam Williams, M.D.

8        b. Guenther Knoblich, M.D.

9        c. Mount Shasta Physical Therapy

10   43. Mr. Anzo's Medical Chronology

11   44. Diagnostic Films performed on Mr. Anzo (MRI's, x-rays, etc.)

12   45. Medical exemplars, medical illustrations, demonstrative medical exhibits,

13   anatomical drawings, and anatomical models regarding Mr. Anzo's injuries

14   46. Prescription medication records post-collision

15   47. Medical bills and receipts post-collision

16   48. Dr. Michael Moskowitz's Rule 26 Report

17   49. Dr. Michael Moskowitz's Medical Illustrations regarding Mr. Anzo's injuries

18   50. Dr. Michael Moskowitz's excerpts from his publication "Your Brain on Pain"

19   51. Dr. Michael Moskowitz's Literature File

20   52. Dr. Michael Moskowitz's CV

21   53. Dr. Brad S. Kauder's Rule 26 Report

22   54. Dr. Brad S. Kauder's Literature File

23   55. Dr. Brad S. Kauder's File regarding Mr. Anzo

24   56. Dr. Glen O'Sullivan's Medical Report of July 22, 2014

25   57. Dr. Sam Williams' Medical Report of August 31, 2014

26   58. Dr. Guenther Knoblich's Medical Report of April 17, 2014

27   59. Medical Report of Dr. Mark Greenberg of April 7, 2014

28   60. Mr. Anzo's Wage Records

61. Above and Below Wage Records (Mr. Anzo's cohort group)

62. Barry Ben Zion Rule 26 Report

63. Barry Ben Zion Chart of Past Lost Wages

64. Barry Ben Zion Chart of Loss of Future Earning Capacity Damages

65. Barry Ben Zion Pedagogical Charts re Economics

66. Barry Ben Zion Chart of Future Medical Expense Damages

67. Barry Ben Zion Chart of Past and Future Loss of Household Services Damages

**ATTACHMENT 4 – DEFENDANT'S EXHIBIT LIST**

1. Union Pacific wage history of Plaintiff Jess Anzo;

2. Plaintiff's employee records;

3. Plaintiff's medical department file;

4. Photographs produced by Jess Anzo, taken by Rick Berger;

5. Photographs taken by George Grochel;

6. Photographs taken by Gordon Thompson;

7. Photographs taken by Gail Jackson;

8. Plaintiff's work history records;

9. Form 52032 report dated 9-30-11;

10. Form 52032 report dated 7-12-11;

11. JSA On-Track Equipment, Revised 12-19-2011;

12. Applicable Union Pacific Safety Rules and General Code of Operating Rules;

13. Power Point Presentation slide dated June 14, 2011;

14. Track Profile;

15. Statements of Plaintiff Jess Anzo;

16. Statements of Rick Berger;

17. June 14, 2011 CT scan of the cervical spine;

18. June 14, 2011 X-ray of the left hip;

19. June 14, 2011 X-ray of the cervical spine;

20. June 14, 2011 X-ray of the chest;

21. June 14, 2011 X-ray of the right knee;

22. June 14, 2011 X-ray of the left shoulder;

23. June 20, 2011 CT scan of head;

24. June 24, 2011, MRI of brain;

25. September 30, 1985 X-Ray of the left shoulder;

26. Mount Shasta Community Hospital September 30, 1985 X-Ray report.

27. Mercy Medical Center Emergency Department Record dated June 16, 1983.

28. December 31, 2002 Record from Siskiyou Medical Group, Weed, California.

29. Medical Records of Siskiyou Medical Group, Weed, California, from 2010 through the present.

30. Medical Records of Sam Williams, M.D., Siskiyou Medical Group, regarding Plaintiff Jess Anzo.

31. Medical Records of Sam Williams, M.D., Exhibit 4 and 5, to Dr. Williams' August 21, 2014 deposition transcript.

32. Medical Records of Dr. Knoblich, Ashland Orthopedic Associates, Ashland Oregon, regarding Plaintiff Jess Anzo, including Exhibits 5, 6, 9 and 10, to Dr. Knoblich's August 15, 2014 deposition transcript.

33. Medical Records of Dr. O'Sullivan, Ashland Orthopedic Associates, Ashland Oregon, regarding Plaintiff Jess Anzo, including Exhibits 5, 6, 9 and 10, to Dr. Knoblich's August 15, 2014 deposition transcript incorporated by reference in Dr. O'Sullivan's August 15, 2014 deposition transcript.

34. Medical Records of Dr. Shishir Dhruva, M.D., regarding Plaintiff Jess Anzo, including exhibits 2, 3, 4, and 5 to the August 12, 2014 deposition transcript of Dr. Dhruva.

35. Medical Records of Dr. Mark Greenberg regarding Plaintiff Jess Anzo.

36. Medical Records and diagnostic test results of Jefferson Neurology, Dr. Zakir Ali, M.D., regarding Plaintiff Jess Anzo, including Exhibits 3, 4, and 5, to Dr. Ali's August 21, 2014 deposition transcript.

37. Medical Records of Dr. Terri Rush, regarding Plaintiff Jess Anzo.

38. Rule 26 Report and supplemental report of Dr. Steven Feinberg, M.D., authored in this matter.

39. File Documents of retained expert Dr. Steven Feinberg, including but not limited to, any and all literature files, CV, demonstratives, and other records.

40. Medical Chronology of Plaintiff's conditions, and pre-existing conditions.

41. Medical exemplars, medical illustrations, demonstrative medical exhibits, anatomical drawings, and anatomical models regarding the condition of Mr. Anzo's medical conditions.

42. Rule 26 Report authored by Kirsten White in this matter.

43. File Documents of retained expert Kirsten White, including but not limited to, site inspection photographs, measurements, and literature file, CV, demonstratives, animations, and other records.

44. Rule 26 Report authored by Jennie McNulty in this matter.

45. File Documents of retained expert Jennie McNulty including but not limited to any and all literature files, calculations, CV, demonstratives, and other records.

46. Union Pacific reserves the right to add additional exhibits should the Court permit Dr. Dean Delis to conduct a second IME of Plaintiff.  That issue is still pending.